# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | HON. CATHY L. WALDOR |
| v. | : | Mag. No. 20-9368 (CLW) |
| LATOYIA McCOLLUM | : | **CRIMINAL COMPLAINT** |

I, Joseph Patricola, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

SEE ATTACHMENT A

In violation of Title 18, United States Code, Section 1512(c).

I further state that I am a Special Agent with the United States Department of Labor, Office of Inspector General, and a Task Force Officer with the Federal Bureau of Investigation and that this complaint is based on the following facts:

SEE ATTACHMENT B

continued on the attached page and made a part hereof.

_____
Joseph Patricola, Special Agent
Department of Labor-OIG

Agent Patricola attested to this Complaint by telephone pursuant to FRCP 4.1(b)(2)(A)

Sworn to before me and subscribed in my presence,

October 6, 2020        at District of New Jersey

_____
HONORABLE CATHY L. WALDOR
UNITED STATES MAGISTRATE JUDGE    Signature of Judicial Officer

## ATTACHMENT A

On or about October 6, 2020, in the District of New Jersey and elsewhere, defendant

## LATOYIA McCOLLUM

did knowingly, intentionally, and corruptly alter, destroy, mutilate and conceal a record, document, and other object, with the intent to impair the object's integrity or availability for use in an official proceeding, otherwise obstruct and impede any official proceeding, and attempt to do so.

In violation of Title 18, United States Code, Section 1512(c) and Section 2.

## ATTACHMENT B

I, Joseph Patricola, am a Special Agent with the United States Department of Labor, Office of Inspector General, and a Task Force Officer with the Federal Bureau of Investigation. I am familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents, and other evidence. Because this Complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where statements of others are related herein, they are related in substance and in part unless otherwise indicated. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. On or about March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act "CARES Act" was signed into law. The CARES Act created a new temporary federal program unemployment insurance program called Pandemic Unemployment Assistance ("PUA"). PUA provides unemployment insurance benefits ("UIBs") for individuals who are not eligible for other types of unemployment (e.g., self-employed, independent contractors, gig economy workers). The CARES Act also created a new temporary federal program called Federal Pandemic Unemployment Assistance ("FPUC") that provides an additional $600 weekly benefit to those eligible for PUA and regular UIBs.

2. On or about October 6, 2020, members of a New Jersey Federal law enforcement unemployment insurance benefits fraud task force went to two locations in New Jersey ("Location 1" and "Location 2") to execute court-authorized search warrants of Location 1 and Location 2 and an arrest warrant for an individual ("Individual 1"). A Federal Criminal Complaint had charged Individual 1 with wire fraud in connection with fraudulently obtaining more than approximately $400,000 in unemployment insurance benefits from the State of New York.

3. Location 1 is a unit within a building. Upon reaching the building, law enforcement knocked on the central door to the building and announced, in substance and in part, their presence and that they were there to execute a warrant.

4. Law enforcement observed an individual looking out a window from Location 1. Law enforcement instructed the individual, in substance and in part, to open the door.

5. After a short time during which no one opened the door to the building, law enforcement forced entry into the building and Location 1.

6. Upon entering Location 1, law enforcement officers observed defendant McCOLLUM: (a) in the kitchen area next to a shredder that was on a counter; (b) placing what appeared to be a credit/debit card into the shredder; and (c) on a face-to-face communication on a handheld mobile device. Law enforcement also heard defendant McCOLLUM repeatedly loudly state, in substance and in part, the first name of Individual 1.

7. Law enforcement thereafter recovered from the shredder: (a) the shreds of what appear to be credit/debit cards; and (b) approximately four credit/debit cards that had been placed into the shredder, but which had not been fully shredded.

8. In addition, law enforcement recovered approximately four credit/debit cards that were on the counter next to the shredder.

9. After defendant McCOLLUM was read and waived her *Miranda* rights, defendant McCOLLUM stated, in substance and in part, that when law enforcement entered Location 1: (a) she was on the telephone with Individual 1; and (b) Individual 1 had instructed her to shred the credit/debit cards.

10. A search of the telephone that defendant McCOLLUM was using when law enforcement entered Location 1, which defendant McCOLLUM stated, in substance and in part, that she used but belonged to Individual 1, revealed numerous pictures of personal identification information belonging to other individuals, including names, dates of birth, social security numbers, and emails addresses, as well as a link to the New York State Department of Labor.

11. Based upon my training and experience, and the investigation to date: (a) the New York State Department Labor administers the unemployment insurance benefit program for the State of New York; and (b) fraudulently obtained unemployment insurance benefits are often transmitted by the issuing authority on or transferred to credit/debit cards.